IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE MONTANEZ, | : | Civil No. 3:20-cv-97 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| ROBERT A. LYNCH, *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Jose Montanez ("Montanez"), an inmate housed at the State Correctional

Institution, Huntingdon, Pennsylvania ("SCI-Huntingdon"), commenced this action pursuant

to 42 U.S.C. § 1983.  (Doc. 1).  The matter is proceeding via an amended complaint.  (Doc.

34).  Named as Defendants are Superintendent Kevin Kauffman, Supervising Nurse Robert

A. Lynch, Healthcare Administrator Paula Price, and Nurse Alexa Dedea (collectively, the

"Corrections Defendants"), and Certified Registered Nurse Practitioner Gabrielle Nalley and

Physician Assistant Fawn Baldauf (together, the "medical Defendants").  (*Id.*).  Montanez

alleges that Defendants violated his Eighth Amendment rights by failing to provide him with

adequate medical care after he suffered a burn on his ankle.  (*Id.*).

Presently before the Court is a motion (Doc. 36) to dismiss pursuant to Federal Rule

of Civil Procedure 12(b)(6) and a motion (Doc. 53) for summary judgment pursuant to

Federal Rule of Civil Procedure 56 by the Corrections Defendants, and a motion (Doc. 40)

to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for

summary judgment pursuant to Federal Rule of Civil Procedure 56 by the medical

Defendants.[1]  The motions are ripe for resolution.  For the reasons set forth below, the

Court will grant each pending motion.

I.      **Allegations of the Amended Complaint**

On September 10, 2019, Montanez was working in the kitchen when he suffered a

burn on his right ankle from scalding hot water.  (Doc. 34, p. 1).  Montanez was transported

to the medical department in a wheelchair.  (*Id.* at pp. 1-2).  Medical staff examined

Montanez's ankle and allegedly informed him that the burn was only superficial and he

"should stop whining."  (*Id.* at p. 2).  A nurse wrapped Montanez's ankle and gave him

Tylenol.  (*Id.* at pp. 2, 7).  Montanez allegedly told the nurse that Tylenol would not help with

the pain and he requested a medical lay-in from work.  (*Id.* at p. 7).  The nurse did not

provide any medication other than Tylenol and informed Montanez that his wound was not

severe enough for a medical lay-in.  (*Id.*).  Montanez then returned to work.  (*Id.*).  Montanez

alleges that Defendant Certified Registered Nurse Practitioner Baldauf approved the

decision to provide Tylenol, even though Defendant Baldauf did not treat him on that day.

(*Id.*).

---

[1]      By Order dated January 12, 2021, the Court informed the parties that, with respect to exhaustion, it would review matters outside the pleadings, consider the PLRA exhaustion issue in the context of summary judgment, and resolve factual disputes in its role as factfinder under *Small v. Camden County*, 728 F.3d 265 (3d Cir. 2013).  (Doc. 50) (citing *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018)). The Order also afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies.  (*Id.*).

On September 17, 2019, Montanez wrote an inmate request form to Defendant Healthcare Administrator Paula Price.  (*Id.* at p. 8).  Defendant Supervising Nurse Robert Lynch responded to the inmate request and allegedly ignored Montanez's complaints of pain, ignored the fact that he was only provided Tylenol, and ignored that he was denied a medical lay-in.  (*Id.*).  Montanez also alleges that Defendant Lynch disregarded his need for extra gauze and band-aids.  (*Id.*).  Montanez asserts that Defendant Superintendent Kauffman is responsible for implementing a policy that allows Defendant Lynch to answer inmate request forms on behalf of Defendant Price.  (*Id.* at p. 9).  He also alleges that Defendant Kauffman is responsible for the lack of security cameras in the medical treatment area.  (*Id.*).

Montanez alleges that Defendant Physician Assistant Nalley treated his burn wound on several occasions and ordered antibiotics, but never provided "better" pain medication or approved a medical lay-in.  (*Id.* at pp. 8-9).

Montanez alleges that Defendant Nurse Dedea advised him that he was longer on the treatment line for October 7, 2019, and later reported to Defendant Nalley that he did not show up for treatment.  (*Id.* at p. 9).  Defendant Dedea allegedly recommended that Montanez's treatment be discontinued and Defendant Nalley discontinued Montanez's treatment for his burn wound on October 12, 2019.  (*Id.*).

II.   **Rule 56 Motions**

A.   **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not

present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a).  "As to materiality,

. . . [o]nly disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence

of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once such a showing has been made, the non-moving

party must offer specific facts contradicting those averred by the movant to establish a

genuine issue of material fact.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Therefore, the non-moving party may not oppose summary judgment simply on the basis of

the pleadings, or on conclusory statements that a factual issue exists.  *Anderson*, 477 U.S.

at 248.  "A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by citing to particular parts of materials in the record . . . or showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an

adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P.

56(c)(1)(A)-(B).  In evaluating whether summary judgment should be granted, "[t]he court

need consider only the cited materials, but it may consider other materials in the record."

FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

### B.    Statement of Undisputed Facts[2]

Montanez alleges that on September 17, 2019, he wrote to Defendant Price about

his allegations of insufficient pain medication.  (Doc. 54-1, Statement of Material Facts, ¶ 3;

Doc. 42-2, pp. 3-6; Doc. 42-2, pp. 26-29; Doc. 58, Counterstatement of Material Facts ¶ 3).

Montanez asserts that he also complained to Defendant Price that he was denied medical

bedrest, forced to work, and he continued to suffer from pain and an infection.  (Doc. 58 ¶

3).  This document was not a grievance, it was an Inmate Request to Staff form.  (Doc. 54-1

¶ 4; Doc. 58 ¶ 4).  Montanez, by his own admission, did not file a grievance until December

2, 2019, which stated that from September 11, 2019 until October 14, 2019, he did not

receive "proper pain medication."  (Doc. 42-3, p. 2; Doc. 51, p. 2; Doc. 54-1 ¶ 5; Doc. 58 ¶

5).  The Facility Grievance Coordinator rejected the grievance as untimely, finding that the

grievance was in violation of DC-ADM 804 because it was not filed within fifteen (15) days

of the events upon which the claim was based.  (Doc. 42-3, p. 6; Doc. 51, p. 6; Doc. 54-1 ¶

6; Doc. 58 ¶ 6).  Montanez then filed an appeal to the Facility Manager.  (Doc. 42-3, pp. 7-9;

Doc. 51, pp. 7-9).  In the appeal, Montanez admitted that his grievance appeal was several

months late.  (Doc. 42-3, p. 7; Doc. 51, p. 7; Doc. 54-1 ¶ 7; Doc. 58 ¶ 7).  On appeal, the

---

[2]    Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial.  *See id.*  The factual background herein derives from the parties' Rule 56 statements of material fact and supporting exhibits.  (Docs. 42-1, 42-2, 42-3, 51, 54-1, 58).

Facility Manager upheld the Facility Grievance Coordinator's rejection of the initial grievance as untimely and also found that the appeal was untimely. (Doc. 42-3, p. 10; Doc. 51, p. 10). Montanez then filed an untimely appeal to the Secretary's Office of Inmate Grievances and Appeals. (Doc. 42-3, pp. 11-13; Doc. 51, pp. 11-13; Doc. 54-1 ¶ 8; Doc. 58 ¶ 8). The Chief Grievance Officer dismissed the appeal because it exceeded the two-page limit set forth in DC-ADM 804. (Doc. 42-3, p. 1; Doc. 51, p. 14).

Montanez does not allege that Defendants did anything to interfere with his ability to file a grievance or an appeal. (Doc. 54-1 ¶ 9). Montanez asserts that, due to his physical and mental conditions, he "over look[ed] [sic] the fact that he had not filed a Grievance specifically pertaining to the issues of the medical department refusing to afford him proper medical treatment." (Doc. 58 ¶ 9). He contends that he filed two other grievances, numbers 824336 and 827931, that were related to other issues with his burn wound. (Doc. 58 ¶ 5).

## C.   Discussion

All Defendants argue that Montanez failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"),[3] before filing this action. (Docs. 42, 54). Pursuant to the PLRA, a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust

---

[3]   The Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory.  *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *Booth*, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement.  *See Nyhuis v. Reno*, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court.  *See id.*  Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court.  *See Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004); *Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court").  Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal

8

court.  *See, e.g.*, *Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000); *Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to strictly comply with this exhaustion requirement.  *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).  However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires."  *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances."  *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005).  In *Ross v. Blake*, the Supreme Court most recently outlined the three instances in which remedies would not be "available" such that exhaustion may be excused: (1) when an administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative remedies are so unclear that "no ordinary prisoner can make sense of what it demands"; and, (3) where prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross v. Blake*, —— U.S. ——, 136 S. Ct. 1850, 1859-60 (2016); *see also Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018).  The Third Circuit Court of Appeals has held that "a prisoner exhausts his administrative remedies as soon as the

prison fails to respond to a properly submitted grievance in a timely fashion." *Shifflett v. Korszniak*, 934 F.3d 356, 359 (3d Cir. 2019).

The record simply does not support a finding that the administrative process was unavailable to Montanez. To the contrary, it establishes that Montanez had ready access to the administrative remedy process. It is clear that Montanez failed to properly his exhaust administrative remedies before initiating the instant action. Moreover, Montanez has not demonstrated that his failure to fully pursue such administrative relief should be excused.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests that their failure to exhaust be excused. An inmate, therefore, cannot excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *Harris*, 149 F. App'x at 59. Furthermore, an inmate cannot avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. *Warman*, 49 F. App'x at 368.

DC-ADM 804 permits any inmate to seek review of problems that may arise during the course of confinement. *See* 37 PA. CODE § 93.9(a); PA. DEP'T OF CORR., No. DC-ADM 804. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the Facility's Grievance Coordinator for initial review. This must occur within

fifteen (15) days after the events upon which the claims are based.  Within fifteen (15) days

of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the

Facility Manager of the institution.  Thereafter, within fifteen (15) days of an adverse

decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office

of Inmate Grievances and Appeals.  An appeal to final review cannot be completed unless

an inmate complies with all established procedures.  An inmate must exhaust all three

levels of review and comply with all procedural requirements of the grievance review

process in order to fully exhaust an issue.  *See Booth*, 206 F.3d at 293 n. 2 (outlining

Pennsylvania's grievance review process); *Ingram v. SCI Camp Hill*, 448 F. App'x 275, 279

(3d Cir. 2011) (same).

Here, Defendants argue that Montanez has failed to exhaust his administrative

remedies, which bars his Eighth Amendment deliberate indifference claim.  Defendants

have supported this argument with record evidence, including Montanez's official

grievances and related appeals.  (Docs. 42-1, 42-2, 42-3).  In an attempt to refute

Defendants' argument in favor of summary judgment, Montanez merely states that he

"forgot to also file the grievance regarding the denile [sic] of proper pain medication and

treatment."  (Doc. 46, pp. 2-3).  He further states that he eventually "realize[d] that [he]

never filed [a] grievance concerning this specific issue and although late, [he] still filed and

exhausted anyway."  (Doc. 47, p. 6).  Montanez does not provide any evidence, via an

affidavit, declaration, or any other statement made under the penalty of perjury to support

any claim that the administrative remedy process was not available to him or that Defendants interfered with his ability to file grievances and appeals.  Indeed, the evidence demonstrates that the administrative remedy process at SCI-Huntingdon was consistently available to Montanez.  (Docs. 42-1, 42-2, 42-3; Doc. 51).

On December 2, 2019, Montanez filed grievance number 837383, related to the allegations in the instant action.[4]  (Doc. 42-2, p. 25; Doc. 51, p. 2).  In the grievance, Montanez alleges that from September 11, 2019 through October 14, 2019, he was not provided proper pain medication for his burn wound.  (*Id.*).  He also alleges that he wrote inmate request forms to Defendant Price, and that Defendant Lynch responded to the forms and ignored his requests for better pain medication.  (*Id.*).  On December 2, 2019, the Facility Grievance Coordinator rejected the grievance as untimely, noting that it "was not submitted within fifteen (15) days after the events upon which [the] claims are based."  (Doc. 42-2, p. 24; Doc. 51, p. 6).  On March 3, 2020, Montanez filed an appeal to the Facility Manager.  (Doc. 42-3, pp. 7-9; Doc. 51, pp. 7-9).  In the appeal to the Facility Manager,

_____

[4]    Montanez also filed grievance numbers 824336 and 827931.  (Doc. 42-1, 42-2).  On September 18, 2019, Montanez filed grievance number 824336, wherein he alleged that he was assaulted and disrespected by a nurse when she took off his sock and threw it at his face.  (Doc. 42-1, p. 16).  On October 3, 2019, Montanez filed grievance number 827931, wherein he alleged that he went to the medical department on September 27, 2019 for a dressing change for his burn wound.  (Doc. 42-1, p. 2).  He stated that he undressed his wound and waited ten to fifteen minutes, but a nurse did not redress the wound, and that his treatment was inappropriately delayed.  (*Id.*).  Montanez acknowledges that these grievances are not related to the specific medical issues in the instant action.  (Doc. 46, pp. 3-4; Doc. 58, pp. 9-13).  As articulated above, the allegations of the amended complaint pertain to Montanez's claims that Defendants did not provide proper medication for his burn wound.  (*See* Doc. 34).  As such, grievance numbers 824336 and 827931 are not relevant to the instant action.

Montanez concedes that "this appeal is several months late," and states that he was "doing [his] best" to handle his legal work and issues with the medical department.  (Doc. 42-3, p. 7; Doc. 51, p. 7).  On March 30, 2020, the Facility Manager upheld the Facility Grievance Coordinator's decision to reject the initial grievance as untimely.  (Doc. 42-3, p. 10; Doc. 51, p. 10).  The Facility Manager also dismissed the appeal as untimely, noting that Montanez was required to submit his appeal by December 26, 2019, but his appeal was not received until March 11, 2020.  (*Id.*).  On April 5, 2020, Montanez filed an untimely appeal to the Secretary's Office of Inmate Grievances and Appeals.  (Doc. 42-3, pp. 11-13; Doc. 51, pp. 11-13).  On April 23, 2020, the Chief Grievance Officer dismissed the appeal for failure to comply with the page limit set forth in DC-ADM 804.  (Doc. 42-3, p. 1; Doc. 51, p. 14).  It is quite clear that Montanez failed to comply with the requirements of DC-ADM 804 and failed to properly exhaust his administrative remedies with respect to the claims in this action.

In light of the undisputed facts and relevant evidence of record, the Court concludes that Montanez has failed to produce any evidence to overcome Defendants' summary judgment motions.  Under Rule 56, Montanez was required to go beyond his pleadings with affidavits or the like in order to establish the existence of a genuine dispute of material fact. *See Celotex Corp.*, 477 U.S. at 324.  Because he has failed to do so, the Court concludes that Montanez has not properly exhausted his claims, and Defendants are entitled to the entry of summary judgment in their favor.

## III.   Rule 12(b) Motion

### A.   Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must

aver "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic

recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop.*

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted).  A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint:  First, the court must take note of the

elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).  This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

[E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## B.   Discussion

In addition to the Corrections Defendants' argument that Montanez failed to exhaust his administrative remedies, they argue that Montanez's claims fail on two grounds: (1) the Defendants cannot be held liable based on their supervisory roles, and (2) failure to state an Eighth Amendment claim.  (Doc. 38).

### 1. *Lack of Personal Involvement*

In order to state an actionable civil rights claim, a plaintiff must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141-42 (3d Cir. 1990). Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

With respect to Kevin Kauffman, the Superintendent of SCI-Huntingdon, Paula Price, the Healthcare Administrator at SCI-Huntingdon, and Robert A. Lynch, a Supervising Nurse at SCI-Huntingdon, a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred.  *See Rode*, 845 F.2d at 1207.  Additionally, any attempt by Montanez to hold these Defendants liable for the actions of their subordinates is essentially an assertion of *respondeat superior* liability which seeks to hold these Defendants liable based on their supervisory roles.  This ground of constitutional liability has been squarely rejected by the courts.  *See Rode*, 845 F.2d at 1207.  Nor can Montanez impose liability on these Defendants based upon their roles in reviewing and responding to inmate requests and grievances.  It has long been recognized that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond, to a prisoner's grievance or complaint, is insufficient to establish personal involvement in the underlying unconstitutional conduct.  *See Rode*, 845 F.2d at 1207-1208 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right"); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that allegations that prison officials and administrators responded inappropriately,

17

or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct). In accordance with the foregoing, any attempt by Montanez to establish liability against the Defendants based upon their responses to inmate requests and grievances does not support a constitutional claim. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005).

For all the foregoing reasons, the motion to dismiss the claims against Defendants Kauffman, Price, and Lynch in their supervisory roles will be granted.

### 2.    *Failure to State an Eighth Amendment Claim*

Montanez alleges that Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, for failing to adequately treat his burn wound. (*See* Doc. 34). The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000). In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to establish deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant: (1) was

18

subjectively deliberately indifferent (2) to the plaintiff's objectively serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the applicable Eighth Amendment analysis requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.  Circumstantial evidence can establish subjective knowledge on the part of the defendant if it shows that the excessive risk was so obvious that the official must have known about it.  *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842).  The Third Circuit has found deliberate indifference when a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197.

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious.  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain.  *See id.*

Moreover, because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. *White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[M]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The Supreme Court has held that negligence or inadvertence alone do not rise to the level of a constitutional violation. *Whitley v. Albers*, 475 U.S. 312 (1986). The Supreme Court has also noted that "[l]ack of due care suggests no more than a failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986). Where a state of mind is relevant, the complaint is inadequate if it merely contains conclusory allegations describing the requisite state of mind such as "intentionally" or "recklessly" without supporting factual allegations. *Wilson v. Seiter*, 501 U.S. 294 (1991).

Prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, *see Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White*, 897 F.2d at 108-10. Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *Pearson v. Prison Health Servs.*, 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is

provided, we presume that the treatment of a prisoner is proper absent evidence that it

violates professional standards of care.").

Montanez alleges that the medication he was provided for his burn wound was

insufficient to treat his pain and that, since Defendants refused to provide him with different

medication, they have shown deliberate indifference to his medical needs.  (Doc. 34).

There is no question that Montanez received some level of medical care after he burned his

ankle.  Montanez acknowledges that he was immediately treated in the medical department

after he burned his ankle, his wound was treated, and he was provided medication, and he

continued to receive medical treatment, antibiotics, and additional medication for his burn

wound.  (*Id.*).  The Court concludes that Montanez's allegations amount to, at most, a

disagreement with the decision to provide certain medication, instead of prescribing a

different medication as requested by Montanez.  Montanez's dissatisfaction with these

medical treatment decisions simply does not rise to a constitutional violation.  It is well-

settled that an inmate's objection to the type of medication provided by prison physicians is

precisely the type of disagreement between an inmate and doctors over alternate treatment

plans that falls well short of a constitutional violation.  These claims are frequently rejected

by the Courts.  *See, e.g.*, *Whooten v. Bussanich*, 248 F. App'x 324, 326-27 (3d Cir. 2007)

(upholding grant of summary judgment that medical staff was not deliberately indifferent for

treating migraine headaches with other medicines and only occasionally with the plaintiff's

preferred drug); *Ascenzi v. Diaz*, 247 F. App'x 390, 391 (3d Cir. 2007) (upholding grant of

motion to dismiss for failure to state a claim, finding no deliberate indifference where plaintiff was provided pain medication and antibiotics instead of narcotic pain relievers for his herniated cervical discs).  The most that can be said of Montanez's claim is that it asserts that the Defendants' professional judgment was deficient.  As articulated above, this is not enough to rise to the level of a constitutional violation and courts will not second guess whether a particular course of treatment is adequate or proper.  *See Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (quoting *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)); *Spruill*, 372 F.3d at 235 (holding that "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation).  Moreover, there is no indication that the Defendants' actions were based on an ulterior motive beyond providing routine patient care.  *See Spruill*, 372 F.3d at 237 (noting that in order to state a deliberate indifference claim, a plaintiff should in some way "connect[ ] his factual allegations to the alleged mental states" of the defendants).  Accordingly, the Court will grant the Corrections Defendants' motion to dismiss the Eighth Amendment claim.

IV.    **Conclusion**

The Court will grant the Defendants' motions (Docs. 40, 53) for summary judgment based on failure to exhaust administrative remedies.  The Court will also grant the Corrections Defendants' motion (Doc. 36) to dismiss.

A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: March 25, 2021